UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHANDA MARIE EDWARDS,<br><br>      Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>      Defendant. | Case No. 3:13-cv-05303-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 14, 2014 |

  Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits ("DIB"). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

  On August 21, 2010, plaintiff protectively filed an application for DIB, alleging disability as of February 15, 2010, due to fibromyalgia. <u>See</u> Administrative Record ("AR") 140-41, 151, 161. Her application was denied upon initial administrative review and on reconsideration. <u>See</u> AR 74-76, 80-84. A hearing was held before an administrative law judge ("ALJ") on December 1, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational

REPORT AND RECOMMENDATION - 1

expert. See AR 26-51.

On December 16, 2011, the ALJ issued a decision finding plaintiff not disabled. See AR 11-21. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 22, 2013, making the ALJ's decision defendant's final decision. See AR 1-6; see also 20 C.F.R. § 404.981, § 416.1481. On April 19, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF # 1. The administrative record was filed with the Court on July 1, 2013. See ECF ## 8-9. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for additional proceedings, because the ALJ erred: (1) in discounting plaintiff's credibility; and (2) in evaluating the medical evidence in the record. For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

REPORT AND RECOMMENDATION - 2

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.   The ALJ's Assessment of Plaintiff's Credibility

The ALJ provided a number of reasons to discount plaintiff's credibility, including (1) inconsistent statements, (2) a limited treatment history, (3) lack of motivation to work, and (4) inconsistent activities. AR 15-16. Plaintiff contends that the ALJ's adverse credibility determination is not supported by clear and convincing reasons, and is thereby erroneous.

   A.   *Legal Standards on Assessing Credibility*

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

B.     *Inconsistent Statements*

REPORT AND RECOMMENDATION - 4

The ALJ identified a number of statements made by plaintiff that she found to be inconsistent with other testimony. First, the ALJ noted that although plaintiff testified at the hearing that medication never relieved her pain enough for her to work, plaintiff also reported to her primary care physician in March 2010 that she was "able to function with her current medication and her current work schedule." AR 15 (citing AR 379). Plaintiff argues that the ALJ misconstrued her hearing testimony, because she testified that she took medication while working — but does not acknowledge that she testified that her medication did not help, whereas she reported to her physician that it helped her maintain her current work schedule. AR 39. The ALJ reasonably construed these two statements to be inconsistent, and properly discounted her credibility on that basis. See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ appropriately considers inconsistencies in a plaintiff's testimony when assessing credibility).

The ALJ next cited a statement plaintiff made to an examining provider, stating that she had worked until April 2010 and tried a part-time schedule for "about a month" (AR 244), but the ALJ noted that she testified that she did not stop working until the end of June 2010. See AR 34. The plaintiff agrees this is an inconsistency but suggests the inconsistency is attributable to a "lack of memory of precise dates rather than a deficit in credibility." Dkt. 11, p. 4. However, plaintiff's alternative interpretation of perhaps ambiguous evidence is not sufficient to overturn the ALJ's interpretation.

The ALJ also contended that plaintiff's report that her fibromyalgia symptoms started approximately two years before an August 2010 evaluation was inconsistent with the record, which showed that plaintiff did not report joint pain in the earliest treatment notes in the record, from an emergency room visit in December 2009. Although plaintiff received emergency care primarily for chest pain and syncope, physical examinations administered in the emergency room

REPORT AND RECOMMENDATION - 5

revealed no specific tenderness in her back, and normal strength and sensation in her upper and lower extremities. AR 442, 447. Plaintiff's record contains no evidence corroborating her report that she experienced fibromyalgia symptoms earlier than January 2010, and the ALJ did not err in noting that lack of corroboration as one reason among others to discount plaintiff's credibility. *See Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Finally, the ALJ found that plaintiff's report to an examiner that her neck pain prevented her from participating in "hardly [] any recreational activities" (AR 259) was contradicted by evidence showing that a week earlier, she had visited a racetrack. AR 337. Plaintiff argues that the ALJ erred in relying on this evidence without showing that her ability to visit a racetrack demonstrates abilities transferable to a work setting. ECF # 11 at 5. This argument overlooks that the ALJ cited plaintiff's recreational activity as evidence that contradicts her testimony, rather than evidence showing she retained abilities transferable to a work setting, which is one valid way an ALJ may rely on a plaintiff's activities to discount his or her credibility. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

  C.  *Limited Treatment History*

The ALJ described plaintiff's fibromyalgia treatment history as "limited" and demonstrating "pain reduction with medication and [that] treating physicians believe the claimant's pain and ability to work could be improved with exercise." AR 16. Although plaintiff contends that the ALJ erred in failing to cite evidence to support this finding, the ALJ described the treatment notes at issue in another portion of the decision. AR 16-17. Plaintiff

REPORT AND RECOMMENDATION - 6

reported to her treating physician that she received "good pain relief" from medication (AR 372), and that she believed her pain medication allowed her to function and work part-time (AR 379). She also reported in July 2010 that her pain was reduced by stretching, pain medications, and ibuprofen. AR 283. Furthermore, plaintiff's fibromyalgia specialist indeed recommended *inter alia* physical therapy and "a home program of stretching, strengthening, and aerobic," and indicated that her prognosis was "satisfactory to good" for pain reduction, an increase in her activities, and a return to work. AR 285-86. This medical evidence undermines plaintiff's allegations of a disabling impairment, because it suggests that her condition was amenable to conservative treatment. See Allen v. Sec'y of Health and Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984).

      D.    *Lack of Motivation to Work*

The ALJ suggested that plaintiff's frequent requests for medical excuses for work absences indicates that she sought treatment "for the purpose of being relieved from work or declared disabled instead of improving her condition." AR 16. Plaintiff did indeed specifically request notes from her treating physician to excuse work absences on multiple occasions, and at one time even suggested the language he should use in writing those notes. See, e.g., AR 358, 372, 388. But this evidence alone does not reasonably evince a lack of motivation to work; the treatment notes establish that plaintiff requested to be relieved from work on the basis of described symptoms, and her physician never indicated that he felt plaintiff's requests were unfounded or inappropriate. That plaintiff requested medical leave is not a clear and convincing reason to discount her credibility.

      E.    *Inconsistent Activities*

REPORT AND RECOMMENDATION - 7

As her final reason to discount plaintiff's credibility, the ALJ cited plaintiff's ability to travel to Scotland and to care for her newborn as evidence that contradicts her description of her limitations. AR 16. The ALJ did not err in construing plaintiff's ability to engage in international travel as inconsistent with her description of limitations in sitting, standing, and walking. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) ([T]he ALJ doubted [claimant's] testimony about the extent of his pain and limitations based on his ability to travel to Venezuela for an extended time to care for an ailing sister. The ALJ could properly infer from this fact that [claimant] was not as physically limited as he purported to be.").

But the undersigned agrees with plaintiff that the ALJ erred in assuming that her childcare activities were inconsistent with her limitations, given that plaintiff testified that she received childcare help from family members. AR 37-38, 41. Without knowing more about the types of childcare tasks and activities plaintiff performed, the ALJ unreasonably assumed that her childcare activities were inconsistent with her alleged limitations.

In sum, the ALJ provided many clear and convincing reasons to discount plaintiff's credibility, along with some invalid reasons. Because the clear and convincing reasons are supported by substantial evidence, and the validity of the overall adverse credibility determination is not negated by the ALJ's inclusion of erroneous reasons, the errors in the credibility assessment are harmless and the ALJ's determination should be affirmed. See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

II.     The ALJ's Evaluation of the Medical Evidence in the Record

Plaintiff challenges the ALJ's assessment of two pieces of medical evidence: a July 2010 medical evaluation report (AR 282-86) written by Kenneth L. Bakken, D.O., Dr. P.H., and a physical capacities evaluation ("PCE") (AR 223-38) written by Christina Casady, OTR/L, M.Ed.

REPORT AND RECOMMENDATION - 8

The ALJ provided reasons to discount that evidence (AR 17-18), and the undersigned will address the sufficiency of the reasons provided as to each report in turn.

### A. *Legal Standards*

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.

REPORT AND RECOMMENDATION - 9

However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan, 242 F.3d at 1149. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other" sources. 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Less weight may be assigned to the opinions of "other" sources. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, and the ALJ may discount the evidence by providing reasons germane to each source. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

REPORT AND RECOMMENDATION - 10

B.      Dr. Bakken's Report

A couple of weeks after Plaintiff stopped working altogether, her treating physician referred her to Dr. Bakken for a fibromyalgia evaluation.  AR 282-86.  Dr. Bakken diagnosed plaintiff with fibromyalgia, and recommended a "therapeutic plan" involving trigger-point injections, physical therapy, medication, and diet modifications.  AR 285-86.  The goal of his therapeutic plan was for plaintiff to return to at least part-time work in 3-6 months.  AR 286.

The ALJ assigned "little weight" to Dr. Bakken's report,

> because he relied on the claimant's subjective complaints of pain, and the claimant is not fully credible.  Furthermore, the overall record demonstrates greater abilities than alleged in the claimant's subjective reports, and Dr. Bakken's findings of inability to work at the time are inconsistent with the overall record.

Tr. 17.  Plaintiff argues that this reasoning is not legitimate because Dr. Bakken himself did not question her credibility, citing Ryan v. Comm'r of Social Sec. Admin., 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

In Ryan, the court held that an ALJ should not discount a physician's opinion on account of reliance on a claimant's self-report if the physician does not question the claimant's credibility and supports his or her opinion with his or her own observations.  Id.  Plaintiff correctly notes that Dr. Bakken did not question her credibility, but she has not shown that Dr. Bakken supported his opinion with his own observations.  Most of Dr. Bakken's report consists of a summary of plaintiff's experience of pain.  AR 283-84.  He diagnosed plaintiff with fibromyalgia (among other things), but did not explain if or how he believed that this prevented her from currently performing work activities.  AR at 285-86.  His indication that plaintiff could be working at least part time in 3-6 months was rendered in the context of her current lack of work and the denial of her long-term disability benefits application, and he did not specifically address

REPORT AND RECOMMENDATION - 11

the degree to which she retained functionality.  AR at 286.  Because Dr. Bakken relied on plaintiff's subjective self-report, which the ALJ properly found to lack credibility (as explained *supra*), and did not support his conclusion about plaintiff's inability to currently work with his own observations, the ALJ did not err in discounting Dr. Bakken's opinion.  See Salchenberg v. Colvin, 534 Fed. Appx. 586, 587 (9th Cir. Jul. 22, 2013).

       C.       Ms. Casady's PCE

Approximately one month after plaintiff was evaluated by Dr. Bakken, she underwent a 3.5-hour PCE with Ms. Casady, an occupational physical therapist.  AR 223-62.  Ms. Casady concluded that plaintiff had the physical capability to perform sedentary to light work, but that she could not perform that work on a reasonably continuous basis due to a number of factors:

> Below competitive productivity levels on work sample activity; limited sustained activity tolerance for sitting, standing, and walking; significant work decondition[ing] evident in the [plaintiff's] reported down time of the majority of the day, discontinued previously-enjoyed leisure activities since the onset of symptoms, lack of client participation in self-directed stretching/strengthening/ aerobic conditioning on a regular basis, and frequent shortness of breath with physical exertion during the evaluation; and significant symptom focus as demonstrated on standardized symptoms questionnaires, behaviors during the evaluation, and use of narcotic pain medication on a daily basis for symptom control.

AR 224.  The ALJ assigned "little weight" to Ms. Casady's opinion because (1) she relied on plaintiff's non-credible reporting of pain; (2) plaintiff reported to Ms. Casady that her fibromyalgia symptoms started two years prior (but there is no medical evidence to corroborate this statement); (3) plaintiff reported to Ms. Casady that she worked part-time for about a month after April 2010 (but in fact worked part-time through June 2010); (4) Ms. Casady rated the reliability of plaintiff's complaints as "fair," but did not have access to all of the evidence of record; (5) plaintiff stopped some of the testing before it was completed, such that Ms. Casady could not obtain "truly objective results"; (6) Ms. Casady's conclusions are inconsistent with

REPORT AND RECOMMENDATION - 12

plaintiff's activities, including an outing to the racetrack, a trip to Scotland to visit her husband's relatives, and caring for a newborn; and (7) Ms. Casady indicated that plaintiff was unable to work due in part to her daily use of narcotics and her failure to exercise regularly, "which are no longer conditions according to later records and [plaintiff's] testimony." AR 18.

Most of these reasons are germane. As to the first reason (reliance on self-reporting), plaintiff argues that ALJ erred because PCEs are objective and do not depend on a claimant's self-report. ECF # 11 at 6-7. Although much of the PCE report contains objective test results, some of Ms. Casady's conclusions are based at least in part on plaintiff's subjective reports, such as her limited sustained activity tolerances and her "significant symptom focus." AR 224. The ALJ correctly noted that Ms. Casady's opinions (not the objective test results) factored in plaintiff's subjective reporting.[2]

As to the second and third reasons — inconsistent statements made by plaintiff to Ms. Casady regarding the onset date of fibromyalgia symptoms and her work history — both reasons are germain, for reasons previously explained *supra*. The ALJ did not err in noting that Plaintiff's medical records did not corroborate her claim that her fibromyalgia symptoms started approximately two years before an August 2010 evaluation, but did err in finding that plaintiff's vague description of her work history amounted to an inconsistency that undermined her credibility.

---

[2] Plaintiff cites Eighth and Ninth Circuit cases referring to PCEs as "objective evidence," rather than medical opinions. ECF # 11 at 7 (citing Muniz v. Amec Constr. Mgmt., Inc., 623 F.3d 1290, 1298 (9th Cir. 2010); Saffon v. Wells Fargo Long Term Disability Plan, 522 F.3d 863, 872 (9th Cir. 2008); Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1051 (8th Cir. 2011)). None of the cited cases involve an application for Social Security benefits; instead they are ERISA cases. To the extent plaintiff relies on these cases to argue that the undersigned should consider a PCE "objective evidence" rather than a "medical opinion," plaintiff is mistaken, because courts addressing PCEs in the Social Security context routinely apply the rules governing medical opinions. See, e.g., Thomas, 278 F.3d at 958; Batson, 359 F.3d at 1198; Christensen v. Astrue, 2009 WL 1250413, at *5-6 (E.D. Wash. May 5, 2009).

REPORT AND RECOMMENDATION - 13

As to the ALJ's fourth reason — Ms. Casady's rating the reliability of plaintiff's reports as "fair" (AR 226) — this is a germane reason to discount Ms. Casady's opinions because, as noted above, some of Ms. Casady's opinions relied on self-reported symptoms and circumstances.  Although, as plaintiff notes, Ms. Casady indicated that plaintiff gave "high effort" on the testing (AR 224), she nonetheless indicated that the reliability of plaintiff's self-reports were only "fair," and the ALJ did not err in discounting Ms. Casady's opinions on that basis.

The ALJ's fifth reason — that plaintiff stopped some of her testing without completing it — is not a germane reason to discount Ms. Casady's opinions, because Ms. Casady herself indicated that plaintiff gave "high effort" on the testing and did not construe her inability to complete testing regarding stooping, crouching, kneeling, and reaching to undermine the validity of the test results.  See, e.g., AR 224, 231.

Sixth, the ALJ reasoned that Ms. Casady's opinions were inconsistent with plaintiff's self-reported activities, including traveling to Scotland, and caring for a newborn.  AR 18.  The ALJ reasonably construed the requirements of international travel to be inconsistent with the limitations Ms. Casady identified in her report, specifically sitting no more than four hours in an eight-hour period and walking no more than one hour in an eight-hour period.  For reasons explained *supra*, the record contains insufficient description of plaintiff's childcare activities to ascertain whether the limitations identified by Ms. Casady are inconsistent.

Last, the ALJ discounted Ms. Casady's opinions because they were based in part on an assumption that plaintiff was taking narcotic medication daily and had ceased exercising regularly (AR 224), on the grounds that "according to later records and the claimant's testimony" plaintiff no longer took narcotics and had started exercising.  AR 18.  Plaintiff does not dispute

REPORT AND RECOMMENDATION - 14

that she no longer takes narcotic medication, but argues that there is "no indication in the record that [she] started to exercise regularly as the ALJ asserts." ECF # 11 at 8. But Dr. Bakken recommended that plaintiff engage in an exercise routine, and she reported to him on a number of occasions in August and September 2010 that she was engaging in exercise. See AR 313, 317, 321, 325, 333, 337, 348. Thus, the ALJ did not err in discounting Ms. Casady's opinion to the extent that it was relied on particular circumstances that changed over time.

Accordingly, because the ALJ provided a number of germane reasons to discount Ms. Casady's opinions regarding plaintiff's limitations, plaintiff has not established that the ALJ erred in discounting Ms. Casady's opinions.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 14, 2014**, as noted in the caption.

DATED this 25th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15